No. 26-5210

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

CIC SERVICES, LLC
*Plaintiff-Appellant*,

v.

INTERNAL REVENUE SERVICE; SCOTT BESSENT, in his official capacity as Acting Commissioner of Internal Revenue; U.S. DEPARTMENT OF THE TREASURY; UNITED STATES OF AMERICA,
*Defendants-Appellees*.

On Appeal from the United States District Court
for the Eastern District of Tennessee

# REPLY BRIEF OF APPELLANT


Adam R. Webber
WEBBER LAW GROUP, LLC
4244 Indian Ripple Rd., Ste. 150
Beavercreek, OH 45440
(937) 470-9668

Kenneth A. Lazarus
LAZARUS & ASSOCIATES
5125 MacArthur Blvd., NW, Ste. 32A
Washington, DC 20016
(202) 295-2330

Cameron T. Norris
Ryan M. Proctor
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22201
(703) 243-9423
cam@consovoymccarthy.com
ryan@consovoymccarthy.com

*Counsel for Appellant CIC Services*

# TABLE OF CONTENTS


Table of Authorities .......... ii

Introduction .......... 1

Argument .......... 1

I. The Final Rule unlawfully designates legitimate captives as listed transactions. .......... 2

A. The IRS exceeded its statutory authority by listing transactions that it did not find to be sham insurance. .......... 2

B. The IRS's decision to list captive transactions without finding that they are sham insurance is also arbitrary and capricious. .......... 9

II. The Final Rule improperly designates captives as transactions of interest without explaining why the IRS needs more information about them. .......... 11

III. The Final Rule disregards the PATH Act's diversification requirements. .......... 14

IV. The Final Rule is not reasonably explained. .......... 16

A. The Rule's reliance on taxpayer examinations is arbitrary. .......... 16

B. The Rule's reliance on caselaw is arbitrary. .......... 18

V. The Final Rule should be vacated. .......... 23

Conclusion .......... 25

Certificate of Compliance .......... 26

Certificate of Service .......... 26

## TABLE OF AUTHORITIES

### Cases

*Am. Wild Horse Pres. Campaign v. Perdue*,
873 F.3d 914 (D.C. Cir. 2017) .......... 10

*Bufkin v. Collins*,
604 U.S. 369 (2025) .......... 25

*Centro de Trabajadores Unidos v. Bessent*,
167 F.4th 1218 (D.C. Cir. 2026) .......... 11

*Chamber of Com. v. SEC*,
85 F.4th 760 (5th Cir. 2023) .......... 22

*Christensen v. Harris Cnty.*,
529 U.S. 576 (2000) .......... 9

*CIC Servs. v. IRS*,
592 F. Supp. 3d 677 (E.D. Tenn. 2022) .......... 1

*CIC Servs. v. IRS*,
593 U.S. 209 (2021) .......... 1, 3

*Cigar Ass'n of Am. v. FDA*,
964 F.3d 56 (D.C. Cir. 2020) .......... *passim*

*Commc'ns & Control, Inc. v. FCC*,
374 F.3d 1329 (D.C. Cir. 2004) .......... 10

*Dep't of Com. v. New York*,
588 U.S. 752 (2019) .......... 23

*Dillon, Read & Co. v. United States*,
875 F.2d 293 (Fed. Cir. 1989) .......... 10

*Drake Plastics Co. v. IRS*,
830 F. Supp. 3d 611 (S.D. Tex. 2026) .......... 1, 12

*Dyer v. Sec'y of HHS*,
889 F.2d 682 (6th Cir. 1989) .......... 14

*Encino Motorcars v. Navarro*,
579 U.S. 211 (2016) .......... 9, 14

*FCC v. Fox Television Stations*,
556 U.S. 502 (2009) .......... 13, 14

*FDA v. Wages & White Lion Invs.*,
604 U.S. 542 (2025) .......... 11, 14, 19

*Flyers Rts. Educ. Fund v. FAA*,
864 F.3d 738 (D.C. Cir. 2017) ........ 18

*Grand v. Univ. Heights*,
159 F.4th 507 (6th Cir. 2025) ........ 25

*Green Rock LLC v. IRS*,
104 F.4th 220 (11th Cir. 2024) ........ 10

*Helvering v. Le Gierse*,
312 U.S. 531 (1941) ........ 8

*Hosseini v. Nielsen*,
911 F.3d 366 (6th Cir. 2018) ........ 17

*Humana Inc. v. Comm'r*,
881 F.2d 247 (6th Cir. 1989) ........ 1, 8, 9

*Kentucky v. EPA*,
123 F.4th 447 (6th Cir. 2024) ........ 25

*Kirschbaum v. Walling*,
316 U.S. 517 (1942) ........ 16

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) ........ 3, 5

*Mann Constr. v. United States*,
27 F.4th 1138 (6th Cir. 2022) ........ 1, 24

*MD Pharm. v. DEA*,
133 F.3d 8 (D.C. Cir. 1998) ........ 18

*Meoli v. Huntington Nat'l Bank*,
848 F.3d 716 (6th Cir. 2017) ........ 23, 24

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ........ 13

*Niz-Chavez v. Garland*,
593 U.S. 155 (2021) ........ 13

*Ohio v. Becerra*,
87 F.4th 759 (6th Cir. 2023) ........ 14

*Pannek v. U.S. Bank Nat'l Ass'n*,
186 F.4th 382 (6th Cir. 2026) ........ 6

*Patel v. Comm'r*,
165 T.C. 171 (2025) ........ 20

*R.V.I. Guar. Co. v. Comm'r*,
145 T.C. 209 (2015) ........ 20, 21

*Reserve Mech. Corp. v. Comm'r*,
34 F.4th 881 (10th Cir. 2022) ........ 20

*Rutherford v. United States*,
146 S.Ct. 1320 (2026) ........ 5

*Ryan, LLC v. IRS*,
2026 WL 1847197 (N.D. Tex. June 26) ........ 17

*Sacora v. Thomas*,
628 F.3d 1059 (9th Cir. 2010) ........ 17

*SEC v. Chenery Corp.*,
318 U.S. 80 (1943) ........ 7, 18, 21, 22

*Swift v. Comm'r*,
T.C. Memo. 2024-13 (2024) ........ 20

*Thompson v. Comm'r*,
148 T.C. 59 (2017) ........ 21

*United States v. Jacobs*,
306 U.S. 363 (1939) ........ 16

*Walker v. United States*,
134 F.4th 437 (6th Cir. 2025) ........ 6

*Wilgar Land Co. v. Dir., Off. of Workers' Comp. Programs*,
85 F.4th 828 (6th Cir. 2023) ........ 14

*Williamson v. Lee Optical*,
348 U.S. 483 (1955) ........ 16

*Wyeth v. Levine*,
555 U.S. 555 (2009) ........ 14

**Statutes**

5 U.S.C. §553 ........ 7, 14

5 U.S.C. §706 ........ 25

I.R.C. §831 ........ 15, 16, 23

I.R.C. §6011 ........ 11

I.R.C. §6707A ........ *passim*

**Regulations**

*AJCA Modifications to the Section 6011 Regulations*,
71 Fed. Reg. 64,488 (2006) ........ 13

*AJCA Modifications to the Section 6011 Regulations*,
72 Fed. Reg. 43,146 (2007) ........ 5, 12, 13, 15

*Micro-Captive Listed Transactions and Micro-Captive Transactions of Interest*,
88 Fed. Reg. 21,547 (2023) ........ 7, 18

*Micro-Captive Listed Transactions and Micro-Captive Transactions of Interest*,
90 Fed. Reg. 3534 (2025) ........ *passim*

Treas. Reg. §1.6011-4 ........ 6, 12

Treas. Reg. §1.6011-11 ........ 20

Treas. Reg. §1.6662-4 ........ 10, 11

Treas. Reg. §601.601 ........ 10

**Guidance**

Notice 2000-44,
2000-2 C.B. 255 ........ 4, 9

Notice 2007-83,
2007-45 I.R.B. 960 ........ 4, 9

Notice 2016-66,
2016-47 I.R.B. 745 ........ 25

**Other Authorities**

*Best's Financial Suite—P/C & L/H, US*, AM Best,
perma.cc/4VRU-FMYX (archived Sept. 30, 2026) ........ 22

## INTRODUCTION

Though there are many flaws with the Final Rule, three are particularly clear.

- The IRS now concedes that, to list a transaction, it must find that "taxpayers are not entitled to the [transaction's] purported tax benefits." Red-Br.60. The IRS previously conceded that it "did not determine, and does not contend, that every transaction" in its listed-transaction designation is "tax avoidant." Cross-MSJ-Reply, R.31, PageID#317. So the IRS listed transactions that are entitled to tax benefits—*i.e.*, it exceeded its authority.

- The IRS further concedes that it previously defined transaction of interest to mean a transaction "for which it lacks sufficient information to designate it a 'listed transaction.'" Red-Br.25. The Final Rule never found that the IRS lacks sufficient information, and it did not abandon this preexisting definition of transaction of interest. So the transaction-of-interest designation is likewise unlawful.

- If that weren't enough, the IRS accepts that it is "required" to "disclos[e] as much information publicly as it can" about the confidential taxpayer examinations on which it relied. Red-Br.52. It conceded below that it could have disclosed more, but "did not." Cross-MSJ, R.25, PageID#222-23. So the Rule must fall as unsupported.

When it comes to captive insurance, the IRS has a long track record of overreach. *See, e.g.*, *Humana Inc. v. Comm'r*, 881 F.2d 247 (6th Cir. 1989); *CIC Servs. v. IRS*, 593 U.S. 209 (2021); *Mann Constr. v. United States*, 27 F.4th 1138 (6th Cir. 2022); *CIC Servs. v. IRS*, 592 F. Supp. 3d 677 (E.D. Tenn. 2022); *Drake Plastics Co. v. IRS*, 830 F. Supp. 3d 611 (S.D. Tex. 2026). It has overreached again. This Court should reverse.

## ARGUMENT

The Final Rule must be set aside because it both exceeds the IRS's statutory authority and is arbitrary and capricious. The Rule unlawfully lists transactions that are

not abusive. It arbitrarily designates small captives transactions of interest without identifying a need for more information on how to classify them. The entire Rule is also inconsistent with the PATH Act's diversification requirements. And the entire Rule is not reasonably explained. Because of these defects, CIC is entitled to vacatur.

## I. The Final Rule unlawfully designates legitimate captives as listed transactions.

The IRS never found that the transactions it listed are sham insurance. The Final Rule thus exceeded its statutory authority, Blue-Br.21-27, and is arbitrary and capricious, Blue-Br.27-28.

### A. The IRS exceeded its statutory authority by listing transactions that it did not find to be sham insurance.

To list a transaction, the IRS must find that it invalidly claims favorable tax treatment. Blue-Br.21-24; I.R.C. §6707A(c)(2). And the IRS never found that the transactions listed in the Final Rule invalidly claim to be insurance. Blue-Br.27-28. The IRS concedes both these points, so it has no basis to dispute that the Final Rule exceeded its statutory authority.

**1.** The IRS admits it had to find that the transactions it listed do not constitute genuine insurance. The agency construes "tax avoidance transaction" to mean a transaction "enabling taxpayers to 'keep themselves away from' tax for which they would otherwise be liable." Red-Br.60 (cleaned up); *see also* Red-Br.60 (reaffirming the agency's "position"). So the Final Rule had to find that the listed transactions involve "a purported insurance arrangement" for which "the taxpayer is claiming tax benefits each

year to which the taxpayer is not entitled." Red-Br.60 (quoting Final Rule, 90 Fed. Reg. 3534, 3553 (2025)).

The IRS tries to confuse the issue by attacking CIC's purported position that a listed transaction must have no "economic substance." Red-Br.60-61. CIC never made that argument. CIC's position is that the IRS must find that a transaction "invalidly claims favorable tax treatment" to list it, which here means that the covered "captives did not constitute genuine insurance." Blue-Br.22, 24. And like the Supreme Court, other courts, and the IRS below, CIC used (and will use in this brief) the terms "sham" and "tax abuse" simply as a shorthand for an "insurance contract" that "is not really for insurance." *CIC*, 593 U.S. at 213; *accord* Blue-Br.23 (collecting cases); Cross-MSJ, R.25, PageID#221 (asserting that the Rule is aimed at detecting "sham transactions"). CIC never argued that the IRS must *also* find that the transaction wholly lacks "economic substance." Red-Br.61.

To be safe, CIC notes that the IRS appears elsewhere to argue that it does not have to find that a transaction invalidly claims favorable treatment before listing it. Red-Br.66-68. But this Court should hold the IRS to its clear concessions above. And it should not let the agency escape its "longstanding" and "consistent" view, *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024), that "listed transactions" are those it "has determined to be *abusive*," Blue-Br.22-23. Even if its lawyers' suggestions now could overcome the agency's concessions and longstanding position, they are unpersuasive.

Making the IRS find that a transaction is abusive before listing it does not put the "cart before the horse." Red-Br.67. The IRS must "specifically identif[y]" a transaction "as a tax avoidance transaction" *before* listing it. I.R.C. §6707A(c)(2). As the IRS's own staff understands, the agency must "know enough about the transaction to make a determination as to whether it is abusive" at the time it makes the listed-transaction designation. A.R., R.39, PageID#11,392; Blue-Br.24.

This requirement is both workable and consistent with the purpose of the reportable-transactions regime. In previous notices, the IRS determined, clearly and directly, that the listed transactions are not legitimate. *See, e.g.*, Notice 2007-83, 2007-45 I.R.B. 960 ("the tax benefits claimed for [the listed transactions] are not allowable for federal tax purposes"); Notice 2000-44, 2000-2 C.B. 255 ("the purported losses arising from [the listed] transactions are not properly allowable for federal income tax purposes"). If the IRS cannot yet determine that an entire class of transactions is abusive, the agency cannot designate them as listed transactions—the *most penalized* category of reportable transaction. *See* Blue-Br.21-22; Red-Br.7. But the agency can still make the transactions "reportable" if they have at least "a potential for tax avoidance or evasion." §6707A(c)(1). The central purpose, in fact, of the transaction-of-interest designation is to allow the IRS to obtain the "information" necessary "to determine whether the transaction should be identified specifically as a tax avoidance transaction." TOI Rule, 72 Fed. Reg. 43,146, 43,146 (2007); Blue-Br.29. The opposite view disrupts this regime.

The IRS has no "discretion" to list non-abusive transactions. *Cf.* Red-Br.67-68. The IRS has discretion to decide whether to list a transaction, but only if it can first determine that the transaction is a "tax avoidance transaction." I.R.C. §6707A(c)(2). The IRS has no authority to change the meaning of that statutory term. *Loper Bright*, 603 U.S. at 412-13. Even if Congress had "expressly delegate[d]" that authority, *see id.* at 394-95 & n.5, the IRS cannot "adop[t] a definition of a term that is inconsistent with the statute," *Rutherford v. United States*, 146 S.Ct. 1320, 1334 (2026). And as both parties agree, a "tax avoidance transaction" under §6707A(c)(2) is one where the taxpayer invalidly claims favorable tax treatment. Blue-Br.21-24; Red-Br.60.

The "lines" the IRS draws in its listed-transaction designation must be actually correct, not just "reasonable." *Contra* Red-Br.68. The days of deferring to an agency's "reasonable" constructions are over. *Loper Bright*, 603 U.S. at 383, 412-13. If the IRS cannot articulate a "bright line" rule that will capture only those captives it believes are illegitimate, then it must err on the side of inaction, not overinclusion. *Cf.* Red-Br.68. Again, the listed-transaction designation is the most powerful tool in the IRS's reportable-transaction belt. Blue-Br.21-22; Red-Br.7. The agency does not need to make every potentially suspicious transaction a listed transaction to weed out abuse; the other kinds of reportable transactions exist for that reason. *See* I.R.C. §6707A(c)(1); Treas. Reg. §1.6011-4(b)(1)-(6).

**2.** Because the IRS never found that the captive arrangements it listed are illegitimate, the agency exceeded its authority under I.R.C. §6707A(c)(2). Blue-Br.25-27. The

agency now insists that it did make such a finding, Red-Br.61-62, but that argument is waived. The agency expressly conceded below that a transaction listed in the Final Rule "may still be legitimate" and that the Rule's "factors" do not establish that "any given transaction" is illegitimate. Cross-MSJ, R.25, PageID#208; *accord* Cross-MSJ-Reply, R.31, PageID#317 ("Treasury did not determine, and does not contend, that every transaction with a modified loss ratio below a certain threshold (with or without related-party financing) is tax avoidant."). Like any other sophisticated litigant, the IRS is bound by this concession. *Walker v. United States*, 134 F.4th 437, 440 (6th Cir. 2025). CIC raised this concession in its opening brief, Blue-Br.26, and the IRS never denied that it made this concession, *see* Red-Br.61-62; so for good measure, the IRS has also forfeited any argument that this concession does not bind it. *Pannek v. U.S. Bank Nat'l Ass'n*, 186 F.4th 382, 392 (6th Cir. 2026).

The IRS made the same concession in the Final Rule. When commenters objected that legitimate captives could fall within the Rule's listed-transaction designation, the IRS responded that the Rule does "not presume to define insurance for Federal tax purposes." 90 Fed. Reg. at 3546. Though CIC quoted this part of the Rule in its opening brief, Blue-Br.25, the IRS ignores it, *see* Red-Br.58-59. Having made these representations in the Rule itself, the IRS cannot adopt a contrary position for the first time in litigation, let alone on appeal. *See* 5 U.S.C. §553(c); *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943); *Cigar Ass'n of Am. v. FDA*, 964 F.3d 56, 64 (D.C. Cir. 2020).

In response, the IRS again tries to muddy the waters about CIC's position. In its opening brief, CIC noted that, instead of defining insurance, the Rule purports only to identify fact patterns "'*associated with* transactions that are or may be tax avoidance transactions.'" Blue-Br.25 (quoting 90 Fed. Reg. at 3546). The IRS responds that the phrase "or may be" was meant to sweep in transactions of interest. Red-Br.58. But the key phrase CIC highlighted was "associated with," not "or may be." *See* Blue-Br.25. That phrase makes clear that the Rule shoots only for a loose correlation, not a definition of illegitimate transactions, which is what §6707A(c)(2) requires. As the IRS put it below, the Rule's "factors" at best "*correlate with* tax avoidant, not-real insurance arrangements"; the factors do not "*control* whether any given transaction is improperly avoidant." Cross-MSJ-Reply, R.31, PageID#316 (emphases added).

The IRS wrongly asserts that the Rule "*did* make a finding of abuse." Red-Br.61-62. The IRS primarily cites the Proposed Rule for this point, which did label the transactions "abusive." 88 Fed. Reg. 21,547, 21,554 (2023); Blue-Br.24. But this Court "cannot uphold a final rule based on reasoning that appears only in the notice … of proposed rulemaking." *Cigar Ass'n*, 964 F.3d at 63. In response to criticism from commenters, the Final Rule disclaimed any intent "to define insurance for Federal tax purposes," adopting instead the correlation view just discussed. 90 Fed. Reg. at 3546. The IRS recognized this below, conceding that the Proposed Rule's "averment" that the listed transactions were illegitimate was "inartful language" that it "remov[ed] … from the Final Rule … in response to comments." Cross-MSJ-Reply, R.31, PageID#324 n.21.

The IRS does not now identify any language in the Final Rule deeming the listed transactions illegitimate. It offers only an unexplained "see" cite to the Final Rule, Red-Br.62, and even that citation encompasses the Rule's *disclaimer* of any intent to "define insurance," 90 Fed. Reg. at 3546.

Even setting aside the IRS's concessions in the district court and the Rule itself, any claim that the transactions listed by the Rule are illegitimate, as a class, is indefensible. Insurance means a contract that has "(1) risk shifting and (2) risk distribution." *Humana*, 881 F.2d at 251 (citing *Helvering v. Le Gierse*, 312 U.S. 531, 539 (1941)). The Rule's mechanistic loss-ratio threshold does not measure the presence of risk shifting or risk distribution. *See Humana*, 881 F.2d at 252-57; 90 Fed. Reg. at 3538 (collecting cases). That is true whether or not the transaction also involves related-party financing, which both parties agree does not make an insurance transaction illegitimate. Blue-Br.39; Red-Br.47. And the Rule's 20% Relationship Test has no bearing on the definition of insurance either. Blue-Br.44-45. Though the IRS claims the test bears on whether the transaction genuinely shifts risk from the policyholder to a distinct insurer, Red-Br.33-34, courts must treat "separate corporations" as distinct entities, whether or not they have common ownership. *Humana*, 881 F.2d at 255. To deny this principle is to revive the "economic family" approach that *Humana* rejected and that the IRS has disavowed. *Id.* at 256; Blue-Br.6-7.

### B. The IRS's decision to list captive transactions without finding that they are sham insurance is also arbitrary and capricious.

The IRS's decision to list captive transactions without determining they are abusive is also arbitrary and capricious. The IRS never denies that failing to make the determination required by §6707A(c)(2) is arbitrary. Blue-Br.27; *see* Red-Br.62. And it doesn't deny that the Rule is internally inconsistent. Blue-Br.28; *see* Red-Br.62. Those defects alone are fatal.

The Rule is also an arbitrary unexplained departure from the IRS's policy of listing only abusive transactions. Blue-Br.27. This policy comes not just from the Internal Revenue Manual but from over 20 years of statements in IRS notices, revenue procedures, and announcements. Blue-Br.22-23; *cf.* Red-Br.62. And the IRS has implemented the policy in practice by listing transactions after finding them to be abusive. *E.g.*, Notice 2007-83; Notice 2000-44.

These sources are sufficiently "[f]ormal" to establish policy. *Cf.* Red-Br.62. Official guidance that lacks the force of law can establish an agency's position under the change-in-position doctrine. A Department of Labor "opinion letter" sufficed in *Encino Motorcars v. Navarro*, 579 U.S. 211, 217 (2016), even though DOL opinion letters "lack the force of law," *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000).

Here, the documents establishing the IRS's position are official agency guidance intended to establish policy and induce reliance. The documents were largely published in the Internal Revenue Bulletin, which is "the 'authoritative instrument for announcing official rulings and procedures of the Service.'" *Green Rock LLC v. IRS*, 104 F.4th 220,

223 (11th Cir. 2024). A "Revenue Procedure," too, "is a statement of procedure that affects the rights or duties of taxpayers or other members of the public," Treas. Reg. §601.601(d)(2)(i)(b), and is an "official statemen[t] of the IRS," *Dillon, Read & Co. v. United States*, 875 F.2d 293, 299 (Fed. Cir. 1989). And "revenue procedures," "notices," and "announcements" are all "substantial authority" that a taxpayer can invoke to establish that he should not be penalized. Treas. Reg. §1.6662-4(d)(3)(iii). Focusing entirely on the Manual, the IRS never denies that these other sources can establish policy. Red-Br.62.

In addition, the change-in-position doctrine requires "a reasoned analysis for departures from prior agency practice," even when the agency has not enshrined the practice in a formally issued "official polic[y]." *Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914, 923 (D.C. Cir. 2017); *accord Commc'ns & Control, Inc. v. FCC*, 374 F.3d 1329, 1335 & n.8 (D.C. Cir. 2004). Even if no single pronouncement by itself established a formal policy, the IRS's repeated pronouncements across over 20 years, along with its past listed-transaction designations, established an agency practice that the IRS cannot abandon without explanation. Blue-Br.22-23.

The guidance in *FDA v. Wages & White Lion Investments* established FDA policy, even though it was much more informal. *See* 604 U.S. 542, 569 n.5 (2025). That guidance was statements and presentations made by FDA officials at "public meeting[s]," "internal memorand[a]," and *ad hoc* "guidance document[s]" published on the FDA's website, all addressing a single cycle of applications for approval of e-cigarette products. *Id.* at

556-60. The FDA did not publish its guidance in an official agency publication, it was not a formally established kind of guidance like a revenue procedure, the guidance was not authority that regulated parties could invoke to lessen their liability, and the FDA did not repeat the guidance for decades across multiple application cycles. But the IRS did all of that here. *See* Blue-Br.22-23; Treas. Reg. §1.6662-4(d)(3)(iii).

Even if I.R.C. §6707A(c)(2) let the IRS list non-abusive transactions, that statutory authority would not render the change-in-position doctrine "inapplicable." *Cf.* Red-Br.62. When an agency has no "discretionary authority" to adhere to its former policy, applying the change-in-position doctrine "would be a 'useless formality.'" *Centro de Trabajadores Unidos v. Bessent*, 167 F.4th 1218, 1237 (D.C. Cir. 2026). But while Congress gave the IRS the *authority* to list transactions that are "tax avoidance transaction[s]," no statute *requires* the agency to list any particular transaction. I.R.C. §6011(a), §6707A(c)(2). The IRS can still adhere to its established policy of listing only abusive transactions, even if the Tax Code authorizes it to list non-abusive transactions.

## II. The Final Rule improperly designates captives as transactions of interest without explaining why the IRS needs more information about them.

The Final Rule's transaction-of-interest designation is likewise arbitrary under the change-in-position doctrine. The Rule departed without explanation from the IRS's longstanding policy of designating a transaction of interest only when the agency needs more information on how to classify that transaction. Blue-Br.29-31.

The IRS spills much ink arguing that it complied with the operative text of Treasury Regulation §1.6011-4. Red-Br.23-24. Of course it did, since the operative text is

"circular." *Drake*, 830 F. Supp. 3d at 627. It defines a "transaction of interest" as "a transaction … that the IRS has identified … as a transaction of interest." Treas. Reg. §1.6011-4(a)(6).

That regulation exceeds the agency's authority unless it's read to incorporate the definition from the preamble: "a transaction that the IRS and Treasury Department believe has a potential for tax avoidance or evasion, but for which the IRS and Treasury Department lack enough information to determine whether the transaction should be identified specifically as a tax avoidance transaction." TOI Rule, 72 Fed. Reg. 43,146, 43,146 (2007). Congress required the IRS to "determin[e]" which transactions "hav[e] a potential for tax avoidance or evasion" "*under regulations*." §6707A(c)(1) (emphasis added). For every other category of §6707A(c)(1) reportable transactions, the IRS provided a meaningful definition in its regulations. Treas. Reg. §1.6011-4(b)(3)-(5). The IRS cannot evade its statutory duty to define reportable transactions "under regulations" by writing itself a regulatory blank check. *See Niz-Chavez v. Garland*, 593 U.S. 155, 169 (2021) ("self-serving regulations never 'justify departing from the statute's clear text'").

But even if the IRS could legitimately define transactions of interest however it wants, the definition from the preamble is still an IRS "policy" that the agency cannot abandon "*sub silentio*." *FCC v. Fox Television Stations*, 556 U.S. 502, 515 (2009). The preamble contains no disclaimer that the IRS does not actually mean to follow its definition. *Cf.* Red-Br.26. Though the preamble says the IRS will not provide a more "specific definition for the transactions of interest category in the regulations," 72 Fed. Reg. at

43,147, it was simply rejecting specific proposals from commenters, like adding a definition of "the term 'participation.'" *Id.* The IRS was not rejecting the very definition of transaction of interest that the IRS itself had proposed. *See id.* at 43,146; Proposed TOI Rule, 71 Fed. Reg. 64,488, 64,488 (2006). Regardless, the passage that the IRS cites says only that the IRS will not adopt a "specific definition … *in the regulations*," 72 Fed. Reg. at 43,147 (emphasis added), which would rigidly bind the IRS to that definition until the agency alters it by notice-and-comment rulemaking, *see Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 41 (1983). That statement does not exclude adopting a narrower definition in the preamble as a matter of policy, which the agency could change without notice-and-comment rulemaking but—under the change-in-position doctrine—still must "display awareness" it is doing so and "show that there are good reasons" for the change. *Fox*, 556 U.S. at 515.

Agencies can adopt policy in the preamble of a rule. *Cf.* Red-Br.27. The Supreme Court has recognized as much, holding that an agency had improperly "reverse[d] [its] own longstanding position" when it contradicted views it had expressed in rule preambles "without providing a reasoned explanation." *Wyeth v. Levine*, 555 U.S. 555, 577-78 & n.10 (2009). A rule preamble is not a "nonbinding guidance documen[t]." *White Lion*, 604 U.S. at 569 n.5. It is the agency's official "statement" of the rules' "basis and purpose" and is "incorporate[d] in the rules" themselves. 5 U.S.C. §553(c). Without a substantively adequate preamble, a rule is unlawful and cannot withstand judicial scrutiny. *Cigar Ass'n*, 964 F.3d at 63-64. And an agency can save a rule from objections in the

rulemaking process precisely "[b]y pledging to" adhere to a particular policy "in the preamble." *Ohio v. Becerra*, 87 F.4th 759, 774 (6th Cir. 2023). To be sure, a preamble is not itself a "binding rule" carrying "the force of law." *Dyer v. Sec'y of HHS*, 889 F.2d 682, 685 (6th Cir. 1989); *Wilgar Land Co. v. Dir., Off. of Workers' Comp. Programs*, 85 F.4th 828, 837 (6th Cir. 2023); Red-Br.26. But a position doesn't have to have the force of law to be a policy an agency must address under the change-in-position doctrine. *See, e.g.*, *Encino*, 579 U.S. at 217 (nonbinding "opinion letter").

The Final Rule violated the change-in-position doctrine. The IRS does not claim that it consciously modified its policy. *See* Red-Br.26-30. Nor did it adhere to its established position. Despite commenters' objections, the Final Rule nowhere asserts that the IRS lacks "enough information to determine whether the transaction should be identified specifically as a tax avoidance transaction," TOI Rule, 72 Fed. Reg. at 43,146, let alone provide a satisfactory explanation why. CIC did not "fai[l] to engage with" the Final Rule's discussion at 90 Fed. Reg. at 3555-56. *Cf.* Red-Br.29-30. It explained that the Final Rule's discussion at 90 Fed. Reg. at 3555-56 did not ground the transaction-of-interest designation in a need for more information on how to classify the transactions. *See* Blue-Br.30-31. And under the APA, the Rule's failure to acknowledge and explain is the problem.

## III. The Final Rule disregards the PATH Act's diversification requirements.

The Rule also must be set aside as inconsistent with the PATH Act. Blue-Br.31-34. The IRS misframes the PATH Act as a mere "prohibition" on certain captives. Red-

Br.54. The Act instead frames "diversification" as a "requiremen[t]" for §831(b) status. §831(b)(2)(A)(ii). A small captive that meets the diversification requirements does not simply escape a specific prohibition; it is "diversif[ied]" in the eyes of Congress and affirmatively entitled to §831(b)'s benefits. *Id.* Deeming a captive that meets these requirements insufficiently "diversified" contravenes the judgment of Congress. Final Rule, 90 Fed. Reg. at 3555.

The IRS's cited cases reveal the folly of its approach. *Cf.* Red-Br.54-55. When "Congress adopts a new scheme," it is inappropriate to assume that the legislation "deals with all situations" because our system of "federalism" leaves a role for States to tackle the same problems. *Kirschbaum v. Walling*, 316 U.S. 517, 521 (1942). But the Tax Code is a unitary federal scheme, and the IRS is not a state legislature. Its role is to enforce Congress's will, not to use its own legislative judgment to fill in what it believes to be the gaps in Congress's scheme. *United States v. Jacobs*, 306 U.S. 363, 371 (1939). Likewise, Congress is free to take "one step at a time" when dealing with a problem. *Williamson v. Lee Optical*, 348 U.S. 483, 489 (1955). But an executive agency implementing the will of Congress must accept the compromises that Congress strikes, not step in to replace Congress's work with its own policy judgments.

The IRS's S Corporation analogy misses the mark. *Cf.* Red-Br.55. The IRS is not prohibited from imposing regulations on §831(b) insurers simply because Congress has conferred favorable treatment on them. But the IRS cannot enshrine its own policy

judgment about the proper diversification of §831(b) insurers when Congress has already directly expressed a contrary judgment on that precise issue.

## IV. The Final Rule is not reasonably explained.

Even if the Final Rule is otherwise lawful, it is not reasonably explained. Though the IRS invoked both taxpayer examinations and caselaw to justify the Rule, its reliance on both sources was arbitrary. Blue-Br.34-46. Vacatur is proper for this reason too.

### A. The Rule's reliance on taxpayer examinations is arbitrary.

The IRS gave no "documentary support" for its assertion that taxpayer examinations supported the Final Rule's designations. *Hosseini v. Nielsen*, 911 F.3d 366, 371 (6th Cir. 2018) (cleaned up). The agency thus did not meet its basic obligation to disclose the basis for its decision. Blue-Br.35-37.

Though the IRS now attempts to confuse the issue, Red-Br.50, the agency concededly withheld the examination data it relied on. The IRS admitted below that its "administrative record" does not "include the individual taxpayer-specific materials" that it "reviewed." Cross-MSJ-Reply, R.31, PageID#321. To be precise, "more than one hundred documents" that the IRS considered "are not included." A.R.-Certif., R.20-1, PageID#115.

The IRS did not "disclos[e] as much information publicly as it can." Red-Br.52. The IRS admitted below that it could have included "an aggregated summary" or "an anonymized, aggregated dataset," but "did not." Cross-MSJ, R.25, PageID#222-23; *see Ryan, LLC v. IRS*, 2026 WL 1847197, at *9 (N.D. Tex. June 26) (recognizing that the IRS could have "disclos[ed]" more "taxpayer information" in a "non-identifying

form"). The IRS's self-serving, conclusory assertion that the examinations support the lines it drew is inadequate. *Cf.* Red-Br.51 (citing 90 Fed. Reg. at 3538). That bald statement gives the Court no way to "ensure" that the agency "articulated a rational connection between the facts found and the choice made" or "provided something in the way of documentary support for its action." *Hosseini*, 911 F.3d at 371 (cleaned up); Blue-Br.35-36.

The IRS's caselaw is inapposite. *Cf.* Red-Br.51. The IRS did not "rely on its" general "experience" without "quantif[ying] it in the form of a study." *Sacora v. Thomas*, 628 F.3d 1059, 1069 (9th Cir. 2010). The agency "considered … more than one hundred" specific "documents" that it has not disclosed. A.R.-Certif., R.20-1, PageID#114-15. Even if the IRS cannot disclose the documents themselves, the APA requires it to "disclos[e] as much information publicly as it can." *Flyers Rts. Educ. Fund v. FAA*, 864 F.3d 738, 745 (D.C. Cir. 2017). And CIC's insistence that the IRS release an anonymized, aggregated version of the data on which it relied is not the same as claiming the agency "has a duty to divulge to interested persons all documents," including those "contain[ing] confidential or trade secret information" from a competitor. *MD Pharm. v. DEA*, 133 F.3d 8, 13 (D.C. Cir. 1998).

The IRS doesn't deny that its failure to disclose sufficient information about the taxpayer examinations was prejudicial. Blue-Br.36-37. The most it can muster is the claim that the disclosed caselaw is "superior" to the undisclosed examination data. Red-Br.50. But the agency cites nothing *in the rulemaking* suggesting it agreed at the time. *See*

*Chenery*, 318 U.S. at 95; *Cigar Ass'n*, 964 F.3d at 63-64. To the contrary, the agency claimed that "examinations of taxpayers … clarified [its] understanding of micro-captive transactions," not caselaw. Proposed Rule, 88 Fed. Reg. at 21,554. The caselaw that the Rule invokes does not place much emphasis on loss ratios or related-party financing, let alone articulate the Rule's bright-line tests. *See* Blue-Br.38. In any event, even if caselaw were a superior source of information, it still would not be "*clear* that the agency's error 'had *no* bearing on the procedure used or the substance of [the] decision reached.'" *White Lion*, 604 U.S. at 590 (emphases added); Blue-Br.37.

**B. The Rule's reliance on caselaw is arbitrary.**

The IRS's unreasonable reliance on caselaw was likewise arbitrary. Blue-Br.37-45. The agency cannot reasonably deem small captives abusive or potentially abusive as a class based on seven cases out of thousands. Blue-Br.37-38. Though the IRS says it cited other insurance cases not dealing with small captives, neither its brief nor the Rule attempts to show that these cases determined the legitimacy of insurance the way the Rule does: with bright-line tests about related-party financing or loss ratios. *Cf.* Red-Br.49. And though the IRS doesn't need to wait for tax abuse to "be reflected in caselaw" before it can designate reportable transactions, it cannot *invoke* caselaw as a key basis for a categorical designation when that caselaw is just a handful of fact-intensive decisions. *Cf.* Red-Br.50.

Even if the caselaw weren't simply too anecdotal to support the Rule, the IRS cannot justify any of the three tests that the Rule adopts through caselaw or other evidence. Blue-Br.38-45.

***Financing Factor.*** The Final Rule does not explain how the presence of related-party financing reliably distinguishes potentially abusive captives from legitimate captives. Only two sham-captive cases cited by the Rule involved related-party financing, and the IRS does not dispute that related-party financing played only a "minimal role" in both decisions. Blue-Br.38-39; *cf.* Red-Br.46-48. The IRS also concedes that legitimate captives engage in related-party financing. Red-Br.48.

The IRS instead places great reliance on *Reserve Mechanical Corp. v. Comm'r*. Red-Br.46-47. But the Final Rule does not cite *Reserve Mechanical* to justify the Financing Factor, *see* 90 Fed. Reg. at 3546, because that case has nothing to do with related-party financing. *Reserve Mechanical* found a suspicious "circular flow of funds" between a captive and a reinsurance pool. 34 F.4th 881, 905-06 (10th Cir. 2022); *see also id.* at 898-900. The court determined that the reinsurance pool was a sham (and thus the captive could not achieve risk distribution through its participation in the pool) because the pool simply returned most of the reinsurance premiums paid to the captive. *Id.* at 905-06, 912; *see also Patel v. Comm'r*, 165 T.C. 171, 178, 194 (2025) (identifying a "circular flow of funds" in the context of payments from a reinsurance pool to the captive); *Swift v. Comm'r*, T.C. Memo. 2024-13, at *33 (2024) (same). But payments *to* captives do not satisfy the Financing Factor; only payments *from* captives to related parties do. Treas.

Reg. §1.6011-11(c)(1)(i). The Final Rule does not target captives attempting to achieve risk distribution through reinsurance arrangements.

***30% Loss Ratio Factor.*** Caselaw does not support the 30% Loss Ratio Factor for listed transactions. Blue-Br.40-42. The Rule based that figure on *R.V.I.*, but the 30% loss ratio there was "more than sufficient" to make the insurer legitimate. *R.V.I. Guar. Co. v. Comm'r*, 145 T.C. 209, 228 (2015). The IRS now claims that the Rule did not identify *R.V.I.* as "an appropriate metric for evaluating the mine-run of small captive insurers." Red-Br.65. But the Rule itself says otherwise. The Rule says it "selected" the 30% ratio "in response to comments indicating that the Tax Court's holding in *R.V.I. supports* a lower loss ratio." 90 Fed. Reg. at 3541 (emphasis added). And the Rule nowhere claims that the insurer in *R.V.I.* is disanalogous to small captives. *See id.* The IRS cannot defend the Rule based on reasoning that does not appear in the Rule. *Chenery*, 318 U.S. at 87; *Cigar Ass'n*, 964 F.3d at 63-64. The IRS's post hoc attempts to distinguish *R.V.I.* are also unpersuasive. Like the insurer in *R.V.I.*, many small captives cover "low-frequency, high-severity risks." 90 Fed. Reg. at 3541. And larger insurers can safely operate at higher loss ratios because they have "incomparably higher volumes of claims, and large underwriting, actuarial and data analytics departments." A.R., R.34-1, PageID#4929.

The Final Rule also disregarded other evidence that legitimate captives can operate at loss ratios below 30%. Blue-Br.41. Although one IRS expert said in passing that "it might be reasonable to expect" "a captive with low expenses" to have a 65% loss

ratio, A.R., R.43-1, PageID#15,485; Red-Br.45, he was not stating a hard-and-fast rule for legitimate insurance, which is why the same expert also opined that "a reasonable loss ratio" could be as low as 10%, PageID#15,479, 15,485; Blue-Br.41. Since "listed transactions" are "per se abusive," the IRS should not be sweeping in captives that even its own experts think have reasonable loss ratios. *Thompson v. Comm'r*, 148 T.C. 59, 67 (2017). The IRS also ignores that illegitimate captives in the caselaw have loss ratios "very close to zero," and not merely below 30%. A.R., R.43-1, PageID#15,479, 15,485; *see* Cross-Opp., R.27, PageID#277-78 (collecting examples from 0% to 5%).

***60% Loss Ratio Factor.*** The 60% Loss Ratio Factor for transactions of interest similarly lacks support in the administrative record. Blue-Br.42-44.

The Final Rule gives no good reason to prefer the NAIC dataset to the AM Best dataset. Though the IRS faults AM Best for including high-frequency, low-severity coverages like home and car insurance, Red-Br.42, that is a reason to adjust AM Best's loss ratios downward, not to prefer NAIC's even higher loss ratios, Blue-Br.43-44.

The IRS also objects that AM Best's data cannot be adjusted because the comment that proposed using it "did not include breakdowns between lines of coverage." Red-Br.42-43 (citing A.R., R.34-1, PageID#4929). But the Final Rule itself never makes this criticism, *see* 90 Fed. Reg. at 3542, so the IRS cannot raise it post hoc, *Chenery*, 318 U.S. at 87; *Cigar Ass'n*, 964 F.3d at 63-64. The wisdom of the *Chenery* rule is apparent here, since it is in fact possible to obtain AM Best's data broken down by individual insurers' "lines of business." *See Best's Financial Suite—P/C & L/H, US*, AM Best,

perma.cc/4VRU-FMYX (archived Sept. 30, 2026). Though the comment did not itself break down AM Best's data by lines of coverage, a comment can "fla[g]" relevant "datasets" without reproducing the relevant data in full. *Chamber of Com. v. SEC*, 85 F.4th 760, 775 (5th Cir. 2023).

Since the Final Rule never actually asserted that the AM Best dataset can't be modified, CIC can't have forfeited any argument that the IRS's new rationale is arbitrary. *Cf.* Red-Br.43-44. Regardless, the district court did not rely on this rationale, *see* Op., R.46, PageID#21,246-47, meaning the IRS must think it's an alternative ground for affirmance. And "there is no waiver when a party responds to [an] alternative basis for affirmance raised on appeal." *Meoli v. Huntington Nat'l Bank*, 848 F.3d 716, 727 n.4 (6th Cir. 2017).

Even if NAIC's data marked the appropriate starting point, the Rule fails to explain why only a 5% downward adjustment is sufficient to address the bias in the dataset. Blue-Br.42-43. The Final Rule did not correct all the bias in the NAIC dataset by purporting to remove high-frequency, low-severity lines of coverage. Red-Br.42-43. For one thing, the Rule does not specify which lines the IRS determined were high-frequency and low-severity, so the agency did not adequately "disclose the basis" of its decision. *Dep't of Com. v. New York*, 588 U.S. 752, 780 (2019). For another, as the IRS conceded below, even with that adjustment, the NAIC data still does not adequately "accoun[t] for" "low frequency risks" because its "averages are calculated annually," necessitating "a downward adjustment" of the loss ratio. Cross-MSJ, R.25,

PageID#212. And because the NAIC dataset includes large commercial insurers, it "reflects greater risk diversification and geographic diversity than the typical §831(b) captive," which further skews the loss ratio upward. PageID#212; Blue-Br.43. The IRS cannot now credibly contend that no downward adjustment was necessary, so it cannot evade the flaw that its mere 5% adjustment was arbitrary and unexplained.

CIC has not forfeited a response to the IRS's new argument that no downward adjustment was necessary. *Cf.* Red-Br.42. The district court did not rely on this point below, Op., R.46, PageID#21,246-47, so CIC is simply responding to an alternative ground for affirmance. *Meoli*, 848 F.3d at 727 n.4.

***20% Relationship Test.*** The Final Rule does not rely on caselaw to explain the 20% Relationship Test. Blue-Br.44-45. The IRS points to a high-level discussion in the Rule that a lack of diversification can lead to abuse, but it points to nothing explaining why the line the Rule draws is more appropriate than the line Congress drew in the PATH Act. *See* Red-Br.30-35. And this high-level discussion cannot deliver on the Final Rule's promise that the designations the Rule makes are drawn from "case law." 90 Fed. Reg. at 3538.

## V. The Final Rule should be vacated.

This Court should remand with instructions to vacate the Final Rule. Blue-Br.45. In appropriate cases, this Court can direct that an IRS rule be "set aside" in the first instance on appeal. *Mann Constr.*, 27 F.4th at 1148. That is the case here. The Rule exceeds the IRS's statutory authority. *Supra* I, III. And the IRS did not contest below that

the Rule should be vacated to the extent it exceeds the agency's statutory authority. Cross-MSJ, R.25, PageID#223-24; Cross-Opp., R.27, PageID#292.

To the extent the Rule is arbitrary and capricious, the Court should order vacatur because the APA requires that remedy. The reviewing court "shall … hold unlawful and set aside agency action … found to be arbitrary, capricious, … or otherwise not in accordance with law." 5 U.S.C. §706(2)(A). Since "the word 'shall' imposes a mandatory command," *Bufkin v. Collins*, 604 U.S. 369, 379 (2025), the statute affords no discretion to remand without vacating, *Kentucky v. EPA*, 123 F.4th 447, 478 (6th Cir. 2024) (Murphy, J., concurring).

Even if courts could sometimes "remand without vacatur," the IRS cannot meet its burden "to establish that the equities justify" doing so here. *Id.* at 473 (majority op.). The IRS forfeited the issue by failing to present a reasoned argument for remand without vacatur in its opposition to CIC's motion for summary judgment. *See* Cross-MSJ, R.25, PageID#223-24; *Grand v. Univ. Heights*, 159 F.4th 507, 515 (6th Cir. 2025). Even setting aside forfeiture, the IRS's APA violations are not "technical error[s] that [it] could easily fix on remand." *Kentucky*, 123 F.4th at 472. This is already the IRS's second attempt to make small captives reportable transactions. Blue-Br.8-10. If the IRS couldn't succeed on its second try, it's unlikely it will succeed on its third. Nor would vacating these reporting requirements "have any unusually disruptive effects," *Kentucky*,

123 F.4th at 473, since the Rule has not long been in place and the IRS already has access to the disclosures it unlawfully obtained under Notice 2016-66, *see* Blue-Br.30.

## CONCLUSION

This Court should reverse and remand with instructions to grant summary judgment to CIC and to set aside the Final Rule.

Respectfully submitted,


/s/ Cameron T. Norris
Cameron T. Norris
Ryan M. Proctor
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22201
(703) 243-9423
cam@consovoymccarthy.com
ryan@consovoymccarthy.com

Adam R. Webber
WEBBER LAW GROUP, LLC
4244 Indian Ripple Rd., Ste. 150
Beavercreek, OH 45440
(937) 470-9668

Kenneth A. Lazarus
LAZARUS & ASSOCIATES
5125 MacArthur Blvd., NW, Ste. 32A
Washington, DC 20016
(202) 295-2330

*Counsel for Appellant CIC Services*

## CERTIFICATE OF COMPLIANCE

This brief complies with Rule 32(a)(7)(B) because it contains 6,360 words, excluding the parts that can be excluded. This brief also complies with Rule 32(a)(5)-(6) because it was prepared using Microsoft Word in 14-point Garamond font.

*/s/ Cameron T. Norris*
Counsel for Appellant
Dated: October 2, 2026

## CERTIFICATE OF SERVICE

I filed this brief via ECF, which will email everyone requiring notice.

*/s/ Cameron T. Norris*
Counsel for Appellant
Dated: October 2, 2026